**TEXAS INTERNATIONAL AIRLINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

Southwest Airlines Company, Intervenor.

**BRANIFF AIRWAYS, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent,**

Southwest Airlines Company, Intervenor.

**Nos. 71-1867, 71-1868.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1972.

Decided Dec. 11, 1972.

---

Mr. Emory N. Ellis, Jr., Washington, D. C., for petitioner in No. 71–1867.

Mr. B. Howell Hill, Washington, D. C., with whom Messrs. David H. Lloyd and Frederick B. Abramson, Washington, D. C., were on the brief, for petitioner in No. 71–1868.

Mr. Robert L. Toomey, Atty., C. A. B., with whom Messrs. R. Tenney Johnson, Gen. Counsel, O. D. Ozmont, Deputy Gen. Counsel, Warren L. Sharfman, As-
sociate Gen. Counsel, Litigation and Research, C. A. B., and Howard E. Shapiro and Robert B. Nicholson, Attys., Dept. of Justice, were on the brief, for respondent.

Mr. Paul Y. Seligson, Washington, D. C., with whom Mr. Paul M. Ruden, Washington, D. C., was on the brief, for intervenor.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

PER CURIAM:

Appellants Braniff Airways and Texas International Airways,[1] federally certified air carriers, seek reversal of orders of the Civil Aeronautics Board dismissing their complaints against Southwest Airlines Company, a state certified air carrier. The complaints alleged that the purely intrastate operations of Southwest in three commercial air markets in Texas would adversely affect interstate carriers in competition with Southwest, and that this effect upon interstate commerce made it necessary under the Federal Aviation Act for Southwest to obtain a certificate of public convenience and necessity from the Board. Appellants also urged the Board to initiate an investigation of Southwest's operations to determine whether they might not in fact constitute interstate commerce; and they assert that the failure to do so was an abuse of the Board's discretion. We find no merit in either of these contentions and, accordingly, deny the petition for review.

This controversy began its lengthy course in November, 1967, when Southwest asked the Texas Aeronautics Commission for a certificate of public convenience and necessity authorizing intrastate service between Dallas, Fort Worth, Houston and San Antonio. Despite active opposition in the proceedings by Braniff and Texas International, the Texas Commission determined that the certificate should be issued.

1. During theses proceedings, the name was changed from Trans-Texas Airways to Texas International Airways.

Braniff and Texas International brought an action for review of the Texas Commission's decision in a Texas state court, and Southwest intervened as a defendant in the action. The trial court, after an evidentiary hearing, reversed the Texas Commission's decision, and that judgment was affirmed by the Court of Civil Appeals of Texas. The Supreme Court of Texas reversed and reinstated the Commission's award. Texas Aeronautics Commission v. Braniff Airways, Inc., Tex., 454 S.W.2d 199 (1970). The Supreme Court of the United States denied certiorari. 400 U.S. 943, 91 S.Ct. 244, 27 L.Ed.2d 247 (1970).

Immediately thereafter, and prior to commencement of operations by Southwest, Braniff and Texas International filed the complaints here in question with the Civil Aeronautics Board, alleging that Southwest was required by the Federal Aviation Act to obtain a certificate of convenience and necessity from the Board, and that it had failed to do so. The Director of the Board of Enforcement dismissed the complaints; and the Civil Aeronautics Board refused to review that action. After Southwest began operations, appellants again sought review of the order, alleging that Southwest was engaged in interstate commerce and urging that the Board investigate Southwest. Those petitions were also denied, and this appeal, in which Southwest has been allowed to intervene, followed.

■ Appellants' argument that certification is required is based on the theory that, in order to effectuate the policies of the Federal Aviation Act, the economic regulatory provisions of the Act should be construed to apply to the activities of carriers which, although engaged in purely intrastate commerce, *affect* interstate commerce. Since Southwest is in competition with Braniff and Texas International, and since the latter carriers are both engaged in interstate

commerce, they argue that Southwest should be subject to federal control. The answer to this contention is found in the plain language of the Act.

The economic regulatory provisions which require certification by the Board apply, insofar as is here pertinent, only to persons who engage in "air transportation" as defined by the Act. Section 401, 49 U.S.C. § 1371(a). Air transportation is defined in relevant part as "interstate air transportation." Section 101 (10), 49 U.S.C. § 1301(10). "[I]nterstate air transportation" is in turn defined as "the carriage by aircraft of persons or property as a common carrier for compensation or hire or the carriage of mail by aircraft, in commerce between . . . a place in any State of the United States, or the District of Columbia, and a place in any other State of the United States, or the District of Columbia. . . ." Section 101(21), 49 U. S.C. § 1301(21). Nothing in this definition is directed at activities which merely affect interstate commerce.

Further, "air commerce," defined in the same provision of the Act as "air transportation," expressly includes "any operation or navigation of aircraft within the limits of any Federal Airway" and "any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate . . . air commerce." Section 101(4), 49 U.S. C. § 1301(4). This indicates that the omission of similar language in the definition of "air transportation" was deliberate. Thus, appellants' position that Southwest should be required to obtain certification because its activities affect interstate carriers is untenable.[2]

■ With regard to appellants' claims that the Board erroneously refused to investigate the complaints that Southwest was engaged in "air transportation," the Act provides that whenever the Board "is of the opinion that any com-

2. The issue presented by the petition for certiorari from the Texas Supreme Court was whether certification by the Texas Commission of an intra-state carrier "is

an unconstitutional burden on interstate commerce in that it adversely affects carriers licensed to conduct interstate service."

plaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing." Section 1002, 49 U.S.C. § 1482(a). Nothing in the case before us indicates an abuse of that discretion.[3]

Affirmed.

WILBUR K. MILLER, Senior Circuit Judge:

The issues tendered to the CAB by Braniff and Texas International had theretofore been adjudicated against them by the Supreme Court of Texas in litigation between the same parties. It follows, of course, that these cases should be disposed of on the ground of res judicata. In ignoring that patent truth and proceeding to a decision on the merits, the majority err because by so doing they countenance an abuse of the judicial process by Braniff and Texas International and encourage others to follow their example.

No matter how clearly it appears that a certain decision on the merits would be justified, I suggest that a court should never follow that indicated easy course in order to avoid consideration and determination of a res judicata question, particularly when, as here, the doctrine is so plainly applicable.

While I have seen a considerable number of res judicata situations in the period of more than fifty-six years since my admission to the bar, I have never seen one more typical than that presented in these cases. In reaching that conclusion, I have read carefully the pleadings and briefs filed by all parties in the Texas courts—a mass of material more than four inches thick—and have thus become familiar with the arguments advanced by the diligent and resourceful counsel for Braniff and Texas International. They omitted no point which their ingenuity could devise in their attack upon the application of Air Southwest. My colleagues do not apply the doctrine of res judicata because they have not read the pleadings and briefs in the Texas courts and hence are not aware of the plain applicability of that doctrine.

In order to demonstrate how aptly res judicata applies here, it is necessary for me to trace the history of the Texas litigation, although doing so will be in part a repetition of the factual portion of the majority opinion: In November, 1967, Air Southwest applied to the Texas Aeronautics Commission for a certificate of public convenience and necessity authorizing it to engage in air transportation of persons and property between various Texas cities, without leaving Texas airspace. The application was actively opposed by Trans-Texas Airways[1] and Braniff Airways, federally certificated air carriers; they were present at and participated in the Texas Commission's hearings and introduced evidence; and each of them filed a brief and presented oral arguments. The Texas Commission determined on February 20, 1968, that the certificate for which Air Southwest had applied should be granted and requested that an appropriate order and certificate be prepared.

Before that could be done, Braniff, Trans-Texas and others filed suit against the Texas Commission in the District Court of Travis County, Texas, praying that its determination to issue a certificate to Air Southwest be set aside and that it be enjoined from issuing it. The Texas Commission's answer put in issue

3. The complaints to the Board, filed before Southwest began operations, asserted that, in order for the proposed operations to be economically viable, Southwest would be necessarily obliged to do things which would involve interstate air transportation. The dismissal of the complaints was grounded upon their hypothetical nature. After the complaints were denied, reconsideration of that order was sought on the basis of allegations of certain inconclusive actions which were said to constitute interstate commerce. The Board adhered to its earlier conclusion that it was premature to launch a formal investigation.

1. During these proceedings the name was changed to Texas International Airlines.

the allegations of the petition. Air Southwest intervened, aligned itself as a defendant, and denied the plaintiffs' allegations.

The plaintiffs' petition attacked the Texas Commission on a number of grounds, which included allegations (1) that the issuance of the certificate and the exercise of rights thereunder would "irreparably harm, injure and damage" them through loss of revenues and would cause them undue economic hardship; and (2) that the action of the Texas Commission constituted a burden on, a regulation of, and an interference with interstate commerce.

They also alleged that the Texas Commission's order is void because it is in conflict with the Federal Aviation Act of 1958[2] which they said gives the CAB exclusive jurisdiction to regulate the operation of aircraft by an air carrier engaging in air transportation. Thus they alleged that Air Southwest would be an air carrier engaged in air transportation, and so would be engaging in interstate commerce. The Texas Commission filed an answer denying the allegations of the petition, and the intervening Air Southwest also denied them.

After a hearing which began March 25, 1968, and continued through May 10, the District Court on August 6, 1968, vacated the order of the Texas Commission and enjoined it from issuing a certificate to Air Southwest. The latter and the State of Texas appealed to the Court of Civil Appeals of Texas which, on March 29, 1969, affirmed the judgment of the District Court. The Texas Aeronautics Commission, Air Southwest and others appealed to the Supreme Court of Texas which, on May 13, 1970, reversed the judgment of the District Court and the Court of Civil Appeals, denied the injunction and all other relief sought by Braniff and the other respondents. Texas Aeronautics Commission v. Braniff Airways, Inc., 454 S.W.2d 199. This was, of course, a decision on the merits.

Braniff then petitioned the Supreme Court of the United States for a writ of certiorari, stating the issue to be

". . . whether certification of an intrastate air line by the Texas Aeronautics Commission to serve the four major Texas cities of Dallas, Fort Worth, Houston and San Antonio is an unconstitutional burden on interstate commerce in that it adversely affects carriers licensed to conduct interstate service."

The Supreme Court denied certiorari. 400 U.S. 943, 91 S.Ct. 244, 27 L.Ed.2d 247 (1970).

Having failed in the courts, Texas International and Braniff filed complaints against Air Southwest (the former on January 21, 1971, and the latter on February 19, 1971) with the Civil Aeronautics Board, a federal agency which regulates interstate air commerce, although Air Southwest had not commenced operations under its Texas certificate.

In its complaint, Texas International asserted that Air Southwest intended, in violation of the Federal Aviation Act, to operate as an air carrier engaged in interstate air transportation without a certificate from the CAB authorizing it to do so. The complaint stated that only Air Southwest "is aware of what are its present intentions," and that Texas International "is not aware of any air transportation now being performed by" Air Southwest; but said that, "to achieve a viable operation . . . it must either (1) transport passengers traveling in interstate commerce" or (2) apply for authority to enter into interline agreements with interstate carriers. Texas International prayed that CAB "assert its jurisdiction over the air transportation proposed to be engaged in" by Air Southwest and that it be ordered "to refrain from any such transportation until it has obtained a Certificate of Public Convenience and Necessity from" the CAB. Braniff's complaint to the CAB differs little from that of Texas International. It states

---

2. 40 U.S.C. § 1301 et seq.

that "The gravamen of this complaint is that Air Southwest has omitted to obtain a certificate from the Board [CAB] as required by the [Federal Aviation] Act."

Under CAB procedure, complaints such as those here involved are submitted first to its Board of Enforcement. The Director of that Board dismissed the complaints, and Texas International and Braniff asked the CAB to review the Director's decision; but the request was denied, the Director's action was affirmed, and the complaints were dismissed.

In its order, which is also in the nature of an opinion, entered June 15, 1971, the CAB rejected the complainants' theory that it had jurisdiction over Air Southwest because the latter must, of economic necessity, engage in interstate commerce when it commenced operations. It also declined to exercise its discretionary jurisdiction to investigate Air Southwest because of the complainants' allegations that its proposed operations would have an adverse effect upon them.

Alleging that, since the entry of the CAB order, Air Southwest had commenced operations, the complainants severally petitioned for review of that order; but they did not allege that Air Southwest's operations were different from those originally proposed by it. Several minor incidents, said to show Air Southwest was engaging in interstate commerce, were also alleged. In response, the CAB said, *inter alia:*

"Upon consideration of the matters presented, we find that these petitions do not establish any error in the Board's decision or present any matters that otherwise would warrant grant of the relief sought. . . ."

So the petitions for reconsideration were denied by an order entered September 3, 1971. On November 2, 1971, Texas International and Braniff severally petitioned this court to review the orders of the CAB.

As I have pointed out, Texas International and Braniff presented to the Travis County District Court the allegations that Air Southwest would be engaged in interstate commerce and that its operations would burden interstate commerce, and would cause economic hardship on the plaintiffs. They further alleged that the Texas Commission order was in conflict with the Federal Aviation Act. In the Texas Supreme Court, Texas International argued that the CAB has exclusive jurisdiction over the operations of Air Southwest. The Court rejected the argument. In that litigation, the issues raised and which could have been raised were decided against them by the Court when it reversed the judgments of the inferior Texas courts. I repeat that, in their complaints to the CAB, Texas International and Braniff presented the same issues which were decided against them by the Texas Supreme Court.

If this were not so—if the complaints to the CAB had presented issues not theretofore expressly adjudicated—the result would be the same. For, it is a well-established rule in federal courts and, as far as I know in all states except Louisiana, that the doctrine of res judicata provides that, if a previous judgment is valid and on the merits, it is an absolute bar in another case on the same cause of action between the same parties and their privies not only in respect of every ground of recovery or defense which was presented but also as to every ground of recovery or defense which might have been presented. Of the numerous cases so holding, I select as typical the following: Rankin v. State of Florida, 418 F.2d 482 (5th Cir. 1969), cert. denied 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 650 (1970); Flynn v. State Board of Chiropractic Examiners, 418 F.2d 668 (9th Cir. 1969). Thus the issues tendered to the CAB were barred by res judicata regardless of whether they were actually presented to the Supreme Court of Texas (if they were not they could and should have been) and expressly decided by that court.

It may be that my colleagues ignore the res judicata situation because they think the doctrine does not apply when

the second presentation of previously adjudicated issues is to an administrative agency and not to a court. I have not found a case on that point, probably because such a situation has not risen heretofore. But I suggest and urge that the doctrine of res judicata, which bars relitigation by the same parties in a second court of issues decided by a court of competent jurisdiction, also prevents the relitigation of those issues before an administrative agency. The elements of res judicata are present here: identity of parties and identity of issues. The CAB should have declined to consider the complaints for that reason.

As my colleagues ignore the res judicata issue and insist on deciding the merits of the twice-told tale tendered to the CAB, it is bootless for me to protest further. So I heartily concur in their conclusion that on the merits the orders of the CAB should be upheld. Texas International and Braniff stated that their complaints were filed with the CAB pursuant to § 1002 of the Federal Aviation Act, 49 U.S.C. § 1482. Tested under that statutory provision, their complaints fail. Section 1002(a) of the Act permits any person to file with the Board "a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this chapter. . . . " Although allegedly proceeding pursuant to that section, Texas International and Braniff told the CAB that Air Southwest [3] had not begun operations; hence that it had not done or omitted to do anything in violation of the Federal Aviation Act. They wanted the CAB to anticipate violations and to prohibit them before they occurred. With commendable candor Texas International and Braniff say: "We realize that we are asking the Board to take a step beyond those which have been taken before." The CAB properly refused to take such a step.

Section 1002(a) further provides that whenever the CAB "is of the opinion that any complaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing." I cannot say the CAB abused its discretion in dismissing the complaints.

It is now five years since Air Southwest applied to the Texas Aeronautics Commission for a certificate of public convenience and necessity. This litigation should have been terminated long ago; its undue prolongation approaches harassment.

---

3. During these proceedings Air Southwest's name was changed to Southwest Airlines Company.